BANKRUPTCY RECOVERY GROUP, LLC
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@brg.legal
GARRETT NYE, ESQ.
Illinois Bar No. 6329215
(*Pro Hac Vice Granted*)
Email: gnye@brg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 702-483-6126
*Special Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>CASH CLOUD, INC., d/b/a COIN CLOUD,<br><br>    Debtor. | Case No. 23-10423-mkn<br><br>Chapter 11 |
| CASH CLOUD, INC. d/b/a COIN CLOUD,<br><br>    Plaintiff,<br>v.<br><br>TWILIO INC.,<br><br>    Defendant. | Adv. Pro. No. 25-01087-mkn<br><br><br>Hearing Date: April 15, 2025<br>Hearing Time: 10:30 a.m. |

**MOTION: (I) PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE AND APPROVE SETTLEMENTS BETWEEN DEBTOR AND (1) 7-ELEVEN, INC.; (2) AMERICAN EXPRESS NATIONAL BANK; (3) SECURETRANS, INC.; (4) BIBBEO LTD.; (5) CYBERCODERS, INC.; (6) DATAART SOLUTIONS, INC.; (7) DSH DELIVERY LLC; (8) GRANITE TELECOMMUNCATIONS LLC; (9) H-E-B, LP; (10) LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.; (11) RANDSTAD NORTH AMERICA, INC.; (12) REPUBLIC SILVER STATE DISPOSAL, INC.; (13) SIEMENS INDUSTRY, INC.; (14) SIMON PROPERTY GROUP, INC.; (15) SMITH & SHAPIRO PLLC; (16) TWILIO INC.; AND (17) STATE REGULATORY REGISTRY LLC; AND (II) PURSUANT TO FED. R. BANKR. P. 328, 330, AND 331 FOR AWARD AND <u>PAYMENT OF CONTINGENCY FEE AND EXPENSES</u>**

Coin Cloud, Inc. d/b/a Coin Cloud ("<u>Debtor</u>"), by and through its special counsel, Bankruptcy Recovery Group, LLC, hereby submits this motion (the "<u>Motion</u>") for: (i) entry of an

order pursuant to Bankruptcy Rule[1] 9019, substantially in the form attached hereto as **Exhibit 2** (the "9019 Order"), approving the proposed Settlement Agreements and Mutual Release by and between the Debtor and (1) 7-Eleven, Inc.; (2) American Express National Bank; (3) Securetrans, Inc.; (4) Bibbeo Ltd.; (5) CyberCoders, Inc.; (6) DataArt Solutions, Inc.; (7) DSH Delivery LLC; (8) Granite Telecommunications LLC; (9) H-E-B, LP; (10) Love's Travel Stops & Country Stores, Inc.; (11) Randstad North America, Inc.; (12) Republic Silver State Disposal, Inc.; (13) Siemens Industry, Inc.; (14) Simon Property Group, Inc.; (15) Smith & Shapiro PLLC; (16) Twilio, Inc.; and (17) State Regulatory Registry LLC (together, the "Settling Transferees"), attached hereto as **Exhibits 3-19**[2] (the "Settlement Agreements"); and (ii) pursuant to Sections 328, 330, and 331 allowing Bankruptcy Recovery Group's ("BRG") contingency fee and reimbursement of expenses for each of the foregoing settlements and the recovery of Debtor's property from a DCM in the possession of the Pequot Lakes Police Department ("Pequot"). A summary of the claims asserted against the Settling Transferees and Pequot, the defenses raised by the Settling Transferees, and the Settlement Agreements is attached hereto as **Exhibit 1.**

This Motion is made and based upon the following memorandum of points and authorities, the declarations of Daniel P. Ayala (the "Ayala Decl.") and Talitha Gray Kozlowski (the "Gray Kozlowski Decl.") filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of this Court.

[2] Debtor notes that the Settlement Agreement with State Regulatory Registry LLC, attached as Exhibit 19, is unsigned. Debtor expects that the unsigned agreement attached will be the final agreement. Should there be any subsequent revisions to the terms of the same, Debtor will supplement this Motion accordingly.

# I.
# BACKGROUND

1. On February 7, 2023, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). *See* ECF No. 1.[3]

2. On October 31, 2024, the Court entered an order authorizing Debtor's retention of BRG, as special counsel, to prosecute the bankruptcy estate actions arising under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Claims") on a contingency fee arrangement. *See* ECF No. 1814.

3. As special counsel, BRG reviewed Debtor's records and the docket in this Bankruptcy Case. Based on that information, BRG identified the Settling Transferees as recipients of avoidable transfers and sent demand letters (the "Demand Packages") to each of the Settling Transferees. *See* Gray Kozlowski Decl. ¶ 3.

4. Adversary complaints were filed against the following three Settling Transferees: (i) Randstad North America, Inc., Adversary No. 25-01052-mkn; (ii) Twilio Inc., Adversary No. 25-01087-mkn; and State Regulatory Registry LLC, Adversary No. 25-01071-mkn.

5. After receiving the Demand Packages and/or Complaints, the Settling Transferees either accepted Debtor's initial settlement offer or provided responses, either asserting defenses, including new value and ordinary course defenses, or making counteroffers to the settlement offers made by Debtor. A brief description of defenses raised by the Settling Transferees is contained in Exhibit 1. *See* Gray Kozlowski Decl. ¶ 4.

6. To the extent a Settling Transferee asserted a defense to Debtor's claim, the defenses were reviewed and analyzed, informal discovery was undertaken where necessary, and negotiations ensued. *Id.* ¶ 5.

7. The process described above resulted in the proposed settlements summarized on Exhibit 1 and memorialized in the Settlement Agreements. *Id.* ¶ 6; Ayala Decl. ¶ 4.

---

[3] Unless otherwise stated herein, all ECF references are to the docket in the lead case.

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## II.
## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and LR 1001(b)(1), the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and venue in this Court is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

9. Pursuant to LR 9014.2, the Debtor consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

10. The statutory bases for the relief requested herein are Sections 105, 328, and 330 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## III.
## LEGAL ARGUMENT

**A.     Applicable Standard Under Bankruptcy Rule 9019.**

Compromise and settlement agreements have long been an integral part of the bankruptcy process. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1958) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14, (1939)). A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable. *See id.*

In order to determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed." *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535 (Bankr. D. Nev. 2011) (*citing In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

In seeking approval of a settlement, the debtor has the burden of persuasion. *See id*. at 536 (*citing TMT Trailer*, 390 U.S. at 425). However, the debtor need not satisfy each of the A&C Properties Factors, as long as they favor approval of the settlement as a whole. *In re Pacific Gas*

*and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own judgment, it determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, a settlement does not have to be the best the Debtor could have possibly obtained, but must only fall "within the reasonable range of litigation possibilities." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the purpose of settlement and frustrate negotiations, but need only canvass the issues. *See Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)); *In re W. Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).

**A.** <u>**The Settlements Are Fair and Reasonable and Should be Approved.**</u>

Here, the A&C Properties Factors support approval of the Settlement Agreements, which are fair and equitable when comparing the estate claims being compromised against the likely rewards of litigating each of the claims through trial.

*First*, the Settlement Agreements provide for a recovery that falls well within the range of litigation possibilities. With respect to the Settling Transferees that did not accept Debtor's initial settlement offer, BRG discussed the claims with the Settling Transferees and, where appropriate, took informal discovery. BRG assessed any information provided by the Settling Transferees, Debtor's records and information otherwise available on the docket. Credit for any subsequent new value was provided (11 U.S.C. § 547(c)(4)) and other asserted defenses (if any) were weighted. BRG used this information to provide Debtor with its best estimate of each Settling Transferee's potential preference exposure. *See* Gray Kozlowski Decl. ¶¶ 4, 5 and 7. Based on those estimates, the Settlement Agreements, in aggregate, represent a recovery of approximately 78% of anticipated liability after application of subsequent new value, but before giving discounts for other potential defenses, including ordinary course of business. *See Id* ¶ 7. Were the Settling Transferees

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

successful on their ordinary course and other defenses, the recovery for the estate would be significantly less. For these reasons, the first A&C Properties Factor weighs in favor of approval of the Settlement Agreements.

*Second*, there is no certainty of collection on any judgment obtained by Debtor against the Settling Transferees. While many of the Settlement Agreements are with large well-established businesses, several are with smaller entities, some of which may lack the wherewithal to return the alleged avoidable transfers. For these reasons, the second A&C Properties Factor weighs in favor of approval of the Settlement Agreements.

*Third*, while Debtor provided the Settling Transferees with subsequent new value credits when appropriate, should any of these matters proceed to litigation, it will be necessary to litigate other potential defenses, including the ordinary course of business defense (11 U.S.C. § 547(c)(2)). This will likely require extensive discovery and trial. For these reasons, the third A&C Properties Factor supports approval of the Settlement Agreements.

*Fourth*, and as noted above, the settlement amounts, in aggregate, represent a favorable recovery for Debtor's estate and without the significant delay and cost of further litigation. This is beneficial to the estate's creditors. For these reasons, the fourth A&C Properties Factor supports approval of the Settlement Agreements.

Based on the foregoing, Debtor submits that each of the Settlement Agreements are fair and reasonable and requests that they be approved. *See* Ayala Decl. ¶ 6.

## IV.
## PAYMENT OF CONTINGENCY FEE AND REIMBURSEMENT OF EXPENSES

BRG was employed as Debtor's special counsel on a contingency basis. *See* ECF Nos. 1780 and 1814. Under the terms of the engagement agreement previously approved by the Court (*See* ECF Nos. 1780 and 1814), BRG's contingency fee is calculated based on the cash value of any recoveries and the cash equivalent value of any claim waiver obtained from a potential defendant (only to the extent the waiver of such claim accrues to the estate's benefit and increases the estate's recovery). BRG's contingency fee for claims resolved prior to the commencement of litigation is 18.5% and 25% for claims filed after the commencement of litigation. In addition to

providing for a contingency fee, the engagement agreement provides for reimbursement of any expenses BRG advanced in connection with pursuing Debtor's Chapter 5 claims. Accordingly, and to the extent the Settlement Agreements are approved, Debtor seeks allowance of and authority to pay BRG a contingency fee of $33,528.43[4] ("Contingency Fee"), plus reimbursement of $16,942.87 of expenses advanced by BRG, both of which will be paid from the settlement proceeds paid by the Settling Transferees. *See* Gray Kozlowski Decl. ¶¶ 10-11.

Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services provided by a professional and decides whether the requested compensation is reasonable. A Section 330 analysis of a contingency fee takes into consideration "settlement proceeds received by the estate in determining a reasonable fee under" Section 330. *See In re Plant Insulation Co.*, 2012 WL 3322636, at * 2 (Bankr. N.D. Cal. Aug. 7, 2012). Debtor submits that the requested Contingency Fee satisfies Section 330. Debtor submits that payment of the Contingency Fee and reimbursement of expenses is reasonable. There are at least three reasons supporting this conclusion.

First, BRG's contingency fee is materially lower than the fee often charged by commercial contingency counsel. *See In re Private Asset Grp., Inc.* 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017) ("Outside of bankruptcy, contingency fees are often 33 percent or, if there is an appeal, 40 percent."); *In re Pearlman,* 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

Second, the Contingency Fee compensates BRG for the broad basket of services provided to Debtor, including some of which resulted in no fee. Contingency fees, by their nature, operate to provide reasonable, market compensation over a series of engagements where any particular engagement presents the risk of non-payment or payment at significantly less than prevailing per-hour rates. While any particular engagement could result in compensation above prevailing per-hour rates, this is counterbalanced by non- or reduced payment in other engagements. This is the case here. BRG was charged with considering and investigating Chapter 5 claims against more

---

[4] A breakdown of this fee by settlement is included in Exhibit 1.

than 92 potential targets. BRG invested substantial resources reviewing Debtor's records to identify and then analyze claims against potential transferees. As a result, BRG's efforts included reviewing, analyzing and making recommendations regarding claims that were not viable. The engagement agreement does not compensate BRG for these significant efforts that benefited the estate. *See* Gray Kozlowski Decl. ¶ 8.

Third, given Debtor's estate's limited assets when BRG was retained, the contingency fee arrangement benefitted Debtor's estate by shifting material risk from the estate onto BRG, which immediately invested resources investigating and pursuing claims for the estate's benefit. *Fann Contracting, Inc. v. Garman Turner Gordon LLP*, 620 B.R. 141, 147 (D. Nev. 2020); *see also, generally, In re Smart World Techs. LLC*, 423 F.3d 166, 180 (2d Cir. 2005) ("Here, Smart World's counsel was retained on a contingency basis, meaning that Smart World's pursuit of its adversary claims would have subjected the bankruptcy estate to no risk, while allowing the estate to reap any potential award."). This included BRG fronting costs associated with sending demands and filing adversary proceedings, as summarized below.

| Description of Expenses | Amount |
|---|---|
| Postage for mailing | $1,229.70 |
| UPS | $63.17 |
| Pro Hac Application | $250.00 |
| Bankruptcy Court Filing Fees for 44 Adversary Complaints | $15,400.00 |

*See* Gray Kozlowski Decl. ¶ 11.

For these reasons, Debtor submits that payment of the Contingency Fee and reimbursement of expenses is reasonable and that payment of the same should be approved.

V.
**CONCLUSION**

The Settlement Agreements are in the best interests of the estate and the Debtor's creditors and are fair and equitable under the standard set forth in *A&C Properties*. Accordingly, Debtor

respectfully requests that the Court enter an order approving the Settlement Agreements and approving and awarding BRG's contingency fee and reimbursement of expenses substantially in the form of **Exhibit 2**.

Dated this ____ of March 2025.

BANKRUPTCY RECOVERY GROUP LLC

By: /s/ Talitha Gray Kozlowski
TALITHA GRAY KOZLOWSKI, ESQ.
GARRETT NYE, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Special Counsel for Debtor*

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000