# EXHIBIT 13

# EXHIBIT 13

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered, as of the Effective Date (as defined herein), by and between Randstad North America, Inc. ("Transferee") and Cash Cloud, Inc. d/b/a Coin Cloud ("Debtor"). Transferee and Debtor are each hereinafter referred to as a "Party" and collectively as the "Parties."

## Background

1. On February 7, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing Chapter 11 Case No. 23-10423 (MKN) ("Case");

2. Debtor asserts that it made transfer(s) totaling $56,291.02 ("Transfers") to Transferee that are avoidable under the provisions of 11 U.S.C. §§ 547 through 550 ("Dispute");

3. Debtor has filed an adversary proceeding in the Bankruptcy Court to avoid and recover the Transfers, Adv. Pro. No.  (the "Adversary Proceeding");

4. Transferee disputes that Transfers are avoidable by the Debtor; and

5. Following good faith negotiations and to avoid the cost and uncertainty of further litigation, Debtor and Transferee desire to settle and compromise the Dispute on the terms set forth in this Agreement.

Accordingly, the Parties agree as follows:

## Article 1. Effective Date, Payment and Court Approval

1.1     Effective Date of Agreement.  This Agreement becomes effective on the date that Debtor delivers to Transferee a copy of the Agreement executed by Debtor (the "Effective Date"). Delivery under this section may be made by email.

1.2     Payment.  Within seven days after the Approval Order (defined *infra*) is entered and Debtor provides a form W-9 and completes Randstad's standard vendor remittance form, Transferee shall pay to Debtor $42,000.00 (the "Settlement Amount"). Unless otherwise agreed to by the Parties in writing, the Settlement Amount shall be paid in readily available U.S. Funds and delivered as follows:

Domestic Wire/ACH Instructions

Bank Name:              Nevada State Bank
                        750 Warm Springs Road
                        Las Vegas, Nevada 89119
Routing/Transit No:     122400779
Beneficiary Name:       Bankruptcy Recovery Group
Beneficiary Acct No.:   983523143

4909-1074-7934

>Reference:     Coin Cloud Preference Action Settlement

1.3 <u>Court Approval.</u>

    1.3.1 <u>9019 Motion</u>. Promptly after the Effective Date, Debtor shall, pursuant to Fed. R. Bankr. P. 9019, file a motion with the Bankruptcy Court seeking approval of this Agreement ("<u>Approval Motion</u>"). Debtor shall share a draft of the exhibit that will be attached to the Approval Motion with counsel to Transferee sufficiently in advance of filing to allow Transferee to comment on it, and Debtor agrees to accept reasonable and customary revisions regarding the description of this Settlement Agreement and underlying claim. The Parties agree to use their best efforts to obtain entry of an order granting the Approval Motion ("<u>Approval Order</u>"). The Parties agree that inclusion of the Settlement Agreement in a motion set for hearing on the Court's April omnibus hearing date satisfies the requirements of this section.

    1.3.3 <u>Entry of Final Order</u>. This Agreement is contingent upon the Approval Order becoming a final order. For purposes of this Agreement, "final order" means an order that has not been reversed, stayed, modified or amended in a manner that undermines the relief sought in the Approval Motion and for which the time to appeal has expired. If the Approval Order is appealed, the Approval Order does not become a final order until the Approval Order is affirmed.

    1.3.4 <u>Return of Settlement Amount</u>. If the Approval Order does not become a final order, Debtor shall promptly return the Settlement Amount in a manner agreed to by the Parties. Upon return of the Settlement Amount, this Agreement is no longer binding upon the Parties.

    1.3.5 <u>Tolling of Case Deadlines</u>. The Parties agree that any deadlines, including without limitation a deadline to file an answer, in the Adversary Proceeding, are stayed pending effectuation of this settlement. If necessary, the Parties shall work together to file such stipulations or other items to ensure that no further action shall be taken or required in the Adversary Proceeding pending effectuation of this settlement.

1.4 <u>Dismissal of Adversary Proceeding</u>. Debtor shall dismiss the Adversary Proceeding, with prejudice, no later than twenty-one days after the Approval Order becomes final, its receipt of the Settlement Amount in accordance with Section 1.2, or Transferee's compliance with Section 3.2, whichever comes later.

**Article 2. Representations and Warranties**

2.1 <u>Representations and Warranties</u>. Transferee represents and warrants that: (i) Transferee is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization; (ii) Transferee is authorized to enter into this Agreement and has full power and authority to execute, deliver and perform its obligations hereunder; (iii) Transferee is the sole owner of all claims released in Section 3.1.2 and has not sold, pledged or otherwise assigned or transferred, in whole or in part, its interest in any such claims; (iv)

there are no pending proceedings before any court, arbitrator, administrative body or governmental body that would adversely affect Transferee's ability to enter this Agreement or to perform its obligations hereunder; (v) the individual executing this Agreement on Transferee's behalf is authorized to do so; and (vi) Transferee had an opportunity to consult with legal counsel regarding the terms of this Agreement. If Transferee is a natural person, Sections 2.1(i), (ii) and (v) are inapplicable.

## Article 3. Releases and Waivers

3.1    Releases.

    3.1.1.    Releases by Debtor. Upon entry of the Approval Order and such becoming a final order, Debtor releases and forever discharges Transferee and its agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Transferee Released Parties") from any and all liabilities, damages, liens, obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether in law or in equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, and that arise out of or relate to the Dispute regarding the Transfers, or other claims arising under Chapter 5 of the Bankruptcy Code which could have been brought in the Adversary Proceeding.

    3.1.2.    Releases by Transferee. Upon entry of the Approval Order and such becoming a final order, Transferee releases and forever discharges Debtor, Debtor's estate and their respective agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Debtor Released Parties" and, together with the Transferee Released Parties, the "Releasees") from any and all liabilities, damages, liens, obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether in law or equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, and that arise out of or relate to the Dispute regarding the Transfers, or other claims arising under Chapter 5 of the Bankruptcy Code which could have been brought in the Adversary Proceeding.

    3.1.3    Scope of Releases. Nothing in this Agreement is a (i) release or waiver of either Party's obligations under this Agreement or (ii) release of any party other than the Releasees.

4909-1074-7934

3.2 <u>Waiver of Claim</u>. Transferee waives (i) its right to assert a claim against Debtor's estates for the Settlement Amount as provide in 11 U.S.C. § 502(h) or otherwise and (ii) Transferee's Proof of Claim filed on February 15, 2023 and docketed as Claim No. 5 ("<u>POC</u>"). Transferee shall withdraw the POC within twenty-one days after the Approval Order becomes final.

3.3 <u>Reserved.</u>

### Article 4. Miscellaneous

4.1 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties regarding its subject matter and supersedes any previous oral or written agreements.

4.2 <u>Binding Effect</u>. This Agreement is binding upon and inures to the benefit of each of the Parties and their respective agents, subsidiaries, employees, officers, directors, predecessors, successors, and assigns.

4.3 <u>Modification</u>. No alteration, amendment or modification to this Agreement is effective or binding unless in writing and signed by all the Parties.

4.4 <u>Waiver</u>. A breach of this Agreement cannot be waived unless in writing. A failure by either Party to enforce its rights under this Agreement is not a waiver of any other rights contained in this Agreement.

4.5 <u>Construction</u>. The Parties jointly negotiated and prepared this Agreement and are satisfied with and fully understand its terms. Accordingly, the Parties agree that the provisions of this Agreement may not be construed or interpreted for or against any of the Parties based upon authorship.

4.6 <u>Pronouns</u>. Use of the pronoun "it" or "its" includes, where applicable, the appropriate male or female pronoun.

4.7 <u>Headings</u>. The headings used in this Agreement are for convenience only and may not be used to construe or interpret this Agreement.

4.8 <u>Severability</u>. Should a court of competent jurisdiction hold that any provision of this Agreement is illegal, invalid, or unenforceable, the remaining provisions of this Agreement will remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious intent of the Parties.

4.9 <u>Governing Law</u>. This Agreement is governed by and construed in accordance with the laws of the State of Nevada without regard to any law concerning the conflicts of laws.

4.10 <u>Retention of Jurisdiction; Consent to Jurisdiction and Venue</u>. The Bankruptcy Court will retain jurisdiction to resolve any disputes regarding this Agreement. The Parties consent to

4909-1074-7934

the exclusive jurisdiction and venue of the Bankruptcy Court to resolve any disputes regarding this Agreement.

4.11   No Admission of Liability.   Neither the execution of this Agreement nor the payment of the Settlement Amount is as an admission of Transferee's liability.

4.12   Original and Counterparts.  This Agreement may be executed in separate counterparts, each of which constitutes an original, and all of which constitute a single agreement.  It is not necessary, in making proof of this Agreement, to produce or account for more than one complete set of counterparts.

4.13   Attorneys' Fees and Costs.  Each Party shall bear its own attorneys' fees and costs.

4.14   Reserved.

4.15   Jury Waiver.   THE PARTIES HEREBY VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO HAVE A JURY RESOLVE ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR RELATES TO THIS AGREEMENT.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the dates below.

**CASH CLOUD, INC. D/B/A COIN CLOUD**

By: *Dan P. Ayala*

Print Name:   Daniel P. Ayala
Print Title:    Independent Director

Date: March 10, 2025

**RANDSTAD NORTH AMERICA, INC.**

By: *Ken Wilson* (Signed by: D24BC69EE871445...)

Print Name:   Ken Wilson
Print Title:    Manager, Busines Services-Credit

Date: 3/11/2025 | 4:08 PM CDT

4909-1074-7934