# EXHIBIT 19

# EXHIBIT 19

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered, as of the Effective Date (as defined herein), by and between State Regulatory Registry LLC ("Transferee") and Cash Cloud, Inc. d/b/a Coin Cloud ("Debtor"). Transferee and Debtor are each hereinafter referred to as a "Party" and collectively as the "Parties."

## Background

1. On February 7, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing Chapter 11 Case No. 23-10423 (MKN) ("Case");

2. Debtor asserts that it made transfer(s) totaling $8,605.00 ("Transfers") to Transferee that are avoidable under the provisions of 11 U.S.C. §§ 547 through 550 ("Dispute");

3. Debtor has filed an adversary proceeding in the Bankruptcy Court to avoid and recover the Transfers, Adv. Pro. No. 25-01071-MKN (the "Adversary Proceeding");

4. Transferee disputes that the Transfers are avoidable by Debtor, and asserts that the Transfers are not avoidable preferences because they were not made on account of antecedent debts;

5. Transferee also asserts various defenses under 11 U.S.C. § 547(c) and that the defenses were known or knowable to Debtor; and

6. Following good faith negotiations and to avoid the cost and uncertainty of further litigation, Debtor and Transferee desire to settle and compromise the Dispute on the terms set forth in this Agreement.

Accordingly, the Parties agree as follows:

## Article 1. Effective Date, Payment and Court Approval

1.1   Effective Date of Agreement. Subject to the other terms contained herein (including in Section 1.3.3), this Agreement shall become effective (the "Effective Date") on the date that Debtor delivers to Transferee a copy of this Agreement executed by Debtor and Transferee. Delivery under this section may be made by email.

1.2   Payment. Within three (3) business days of the Approval Order (as defined below) becoming a Final Order (as defined below), Transferee shall pay to Debtor $4,000.00 (the "Settlement Amount"). Unless otherwise agreed to by the Parties in writing, the Settlement Amount shall be paid in readily available U.S. Funds and delivered as follows:

<u>Domestic Wire/ACH Instructions</u>

| | |
|---|---|
| Bank Name: | Nevada State Bank |
| | 750 Warm Springs Road |
| | Las Vegas, Nevada 89119 |
| Routing/Transit No: | 122400779 |
| Beneficiary Name: | Bankruptcy Recovery Group |
| Beneficiary Acct No.: | 983523143 |
| Reference: | Coin Cloud Preference Action Settlement |

1.3  <u>Court Approval</u>.

    1.3.1  <u>9019 Motion</u>. Debtor shall, pursuant to Fed. R. Bankr. P. 9019, file a motion with the Bankruptcy Court seeking approval of this Agreement ("<u>Approval Motion</u>"). Debtor shall file the Approval Motion so that it will be set for hearing at the Bankruptcy Court's April omnibus hearing for the Case. Debtor shall share a draft of the exhibit that will be attached to the Approval Motion with counsel to Transferee sufficiently in advance of filing to allow Transferee to comment on it, and Debtor agrees to accept reasonable and customary revisions regarding the description of this Settlement Agreement and underlying claim. Debtor agrees to use its best efforts to obtain entry of an order granting the Approval Motion ("<u>Approval Order</u>") as soon as possible following the Effective Date.

    1.3.3  <u>Entry of Final Order</u>. Notwithstanding the occurrence of the Effective Date, this Agreement and the Parties' respective obligations hereunder are fully contingent upon the Approval Order becoming a Final Order. For purposes of this Agreement, "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment the time to appeal or to seek certiorari, a new trial, reargument, review or rehearing has expired and as to which no appeal, petition for certiorari or motion for a new trial, reargument, review or rehearing, if filed, remains pending; provided, however, that the possibility that a motion under Rules 59 and 60 of the Federal Rules of Civil Procedure, 11 U.S.C. § 1144 or any analogous rules under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order shall not prevent such order from being a Final Order. For purposes of clarity, the parties agree that the Approval Order becomes final 15 days after it is entered if no notice of appeal is filed pursuant Fed. R. Bankr. P. 8002 and no motion for a new trial, reargument, review or rehearing is pending; provided, however, that in accordance with Fed. R. Bankr. P. 9006, if the 15th day after the Approval Order is entered is a Saturday, Sunday, or legal holiday, the Approval Order becomes final on the next day after the 15th day that is not a Saturday, Sunday, or legal holiday.

    1.3.4  <u>Termination</u>. If the Approval Order has not become a Final Order within sixty (60) days of the Effective Date (or within such additional time as mutually agreed upon by the Parties), then (i) this Agreement (other than this Section 1.3.4) shall automatically terminate and be null and void; and (ii) all of the statements, releases,

    consents, and agreements contained in this Agreement (other than this Section 1.3.4) shall be null and void.

1.4  Stay and Dismissal of Adversary Proceeding. The Parties agree to stay the Adversary Proceeding pending the Court's consideration of the Approval Motion and any Approval Order becoming a Final Order. Debtor shall dismiss the Adversary Proceeding, with prejudice, upon its receipt of the Settlement Amount in accordance with Section 1.2; provided, however, that Debtor is under no obligation to dismiss the Adversary Proceeding until the Approval Order becomes a Final Order.

### Article 2. Representations and Warranties

2.1  Transferee's Representations and Warranties.  Transferee represents and warrants that: (i) Transferee is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization; (ii) Transferee is authorized to enter into this Agreement and has full power and authority to execute, deliver and perform its obligations hereunder; (iii) Transferee is the sole owner of all claims released in Section 3.1.2 and has not sold, pledged or otherwise assigned or transferred, in whole or in part, its interest in any such claims; (iv) there are no pending proceedings before any court, arbitrator, administrative body or governmental body that would adversely affect Transferee's ability to enter this Agreement or to perform its obligations hereunder; (v) the individual executing this Agreement on Transferee's behalf is authorized to do so; and (vi) Transferee had an opportunity to consult with legal counsel regarding the terms of this Agreement.

2.2  Debtor's Representations and Warranties.  Debtor represents and warrants that: (i) Debtor is authorized to enter into this Agreement and has full power and authority to execute, deliver and perform its obligations hereunder; (ii) Debtor is the sole owner of all claims released in Section 3.1.1 and has not sold, pledged or otherwise assigned or transferred, in whole or in part, its interest in any such claims; (iii) there are no pending proceedings before any court, arbitrator, administrative body or governmental body that would adversely affect Debtor's ability to enter this Agreement or to perform its obligations hereunder; (iv) the individual executing this Agreement on Debtor's behalf is authorized to do so; and (v) Debtor had an opportunity to consult with legal counsel regarding the terms of this Agreement.

### Article 3. Releases and Waivers

3.1  Releases.

    3.1.1. Releases by Debtor. Upon Debtor's receipt of the Settlement Amount in accordance with Section 1.2, Debtor releases and forever discharges Transferee and its agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Transferee Released Parties") from any and all liabilities, damages, liens,

obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether at law or in equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, that Debtor or Debtor's estate have or may have against Transferee, including related to the Dispute, the Transfers, and any and all payments made to the Transferee Released Parties prior to the Petition Date.

3.1.2. Releases by Transferee. Upon Debtor's receipt of the Settlement Amount in accordance with Section 1.2, Transferee releases and forever discharges Debtor and Debtor's estate and their respective agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Debtor Released Parties" and, together with the Transferee Released Parties, the "Releasees") from any and all liabilities, damages, liens, obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether at law or in equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, that Transferee has or may have against Debtor or Debtor's estate, including related to the Dispute, the Transfers, and any and all payments made to the Transferee Released Parties prior to the Petition Date.

3.1.3 Scope of Releases. Nothing in this Agreement is a (i) release or waiver of either Party's obligations under this Agreement or (ii) release of any party other than the Releasees.

3.2   Reserved.

3.3   Reserved.

### Article 4. Miscellaneous

4.1   Entire Agreement. This Agreement constitutes the entire agreement between the Parties regarding its subject matter and supersedes any previous oral or written agreements.

4.2   Binding Effect. This Agreement is binding upon and inures to the benefit of each of the Parties and their respective agents, subsidiaries, employees, officers, directors, predecessors, successors, and assigns. This Agreement shall also be binding on any trustee or examiner that may be appointed in the Case and on any chapter 7 trustee in the event the Case is converted to a case under chapter 7 of the Bankruptcy Code.

4.3   Modification. No alteration, amendment or modification to this Agreement is effective or binding unless in writing and signed by all the Parties.

4.4   Waiver.  A breach of this Agreement cannot be waived unless in writing. A failure by either Party to enforce its rights under this Agreement is not a waiver of any other rights contained in this Agreement.

4.5   Construction.  The Parties jointly negotiated and prepared this Agreement and are satisfied with and fully understand its terms. Accordingly, the Parties agree that the provisions of this Agreement may not be construed or interpreted for or against any of the Parties based upon authorship.

4.6   Pronouns.  Use of the pronoun "it" or "its" includes, where applicable, the appropriate male or female pronoun.

4.7   Headings.  The headings used in this Agreement are for convenience only and may not be used to construe or interpret this Agreement.

4.8   Severability.  Should a court of competent jurisdiction hold that any provision of this Agreement is illegal, invalid, or unenforceable, the remaining provisions of this Agreement will remain in full force and effect, unless such portion of this Agreement is so material that its deletion would violate the obvious intent of the Parties.

4.9   Governing Law.  This Agreement is governed by and construed in accordance with the laws of the State of Nevada without regard to any law concerning the conflicts of laws.

4.10  Retention of Jurisdiction; Consent to Jurisdiction and Venue.  The Bankruptcy Court will retain jurisdiction to resolve any disputes regarding this Agreement. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court to resolve any disputes regarding this Agreement.

4.11  No Admission of Liability.   Neither the execution of this Agreement nor the payment of the Settlement Amount is as an admission of Transferee's liability, including that the Transfers are avoidable preferences.

4.12  Original and Counterparts.  This Agreement may be executed in separate counterparts, each of which constitutes an original, and all of which constitute a single agreement.  It is not necessary, in making proof of this Agreement, to produce or account for more than one complete set of counterparts.

4.13  Attorneys' Fees and Costs.  Each Party shall bear its own attorneys' fees and costs.

4.14  Reserved.

4.15  Jury Waiver.  THE PARTIES HEREBY VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO HAVE A JURY RESOLVE ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR RELATES TO THIS AGREEMENT.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the dates below.

**CASH CLOUD, INC. D/B/A COIN CLOUD**

By: _____
    Print Name:   Daniel P. Ayala
    Print Title:    Independent Director
Date: _____

**STATE REGULATORY REGISTRY LLC**

By: _____
    Print Name:
    Print Title:
Date: _____